IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA



| | | |
|---|---|---|
| **KEVIN BRIAN DOWLING,** | : | **No. 3:15-CV-00220** |
| **Petitioner** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **JOHN E. WETZEL, *et al.*,** | : | |
| **Respondents** | : | |

## MEMORANDUM

Presently before the Court is Petitioner Kevin Dowling's motion for transfer of evidence. (Doc. 59). In his motion, Petitioner requests that rope and fiber evidence be transferred from the York County Court of Common Pleas and the West Manchester Police Department to Microtrace LLC to allow his retained expert to "accurately determine [its] composition." Id. at 4. For the reasons that follow, the Court will **GRANT** Petitioner's motion and **CERTIFY** its Order for interlocutory appeal.

## I.    Background

Petitioner Kevin Dowling is a state prisoner convicted in April 1998 of robbery, criminal attempt to commit rape, and indecent assault. Petitioner was also separately sentenced to death by second trial in November 1998 for murdering the victim. Com. v. Dowling, No. 744 MDA 2013, 2014 WL 10915493, at *1 (Pa. Super. Ct. July 9, 2014). The Pennsylvania Superior

Court affirmed Petitioner's noncapital convictions on July 1, 1999. <u>Com. v. Dowling</u>, 742 A.2d 202 (Pa. Super. Ct. 1999). The Pennsylvania Supreme Court affirmed Petitioner's capital conviction on direct appeal. <u>Dowling</u>, 2014 WL 10915493, at *1. Before affirming, however, the Supreme Court remanded Petitioner's capital case to the trial court on July 10, 2001, to permit an evidentiary hearing on Petitioner's allegations of ineffective assistance of counsel. <u>Id</u>; (Doc. 81-3). On November 9, 2001, Petitioner filed a *pro se* PCRA petition in his noncapital case, in which, as in his capital case, he asserted ineffective assistance of counsel claims. <u>See Dowling</u>, 2014 WL 10915493, at *1.

In August 2002, the trial court held a joint evidentiary hearing on all of Petitioner's ineffective assistance of counsel claims. <u>Id.</u> Notably, however, it did not consolidate his two cases. <u>Id.</u> On April 2, 2004, the trial court issued an opinion in which it found Petitioner's ineffective assistance of counsel claims—both those alleged in his capital direct appeal and in his noncapital PCRA petition—to lack merit. (Doc. 65-1, at 365–99). It then issued a Pennsylvania R.A.P. 1925(a) opinion in Petitioner's capital appeal in which it "incorporate[d] herein by reference" its opinion "finding failure to establish ineffective assistance of counsel." (Doc. 80-3). The trial court did

2

not, however, enter a final order denying relief in Petitioner's noncapital PCRA case.  Com. v. Dowling, 883 A.2d 570, 575 n.4 (Pa. 2005).

On September 29, 2005, the Pennsylvania Supreme Court affirmed Petitioner's capital conviction and death sentence.  Id. at 579.  In its opinion, the Supreme Court explained that Petitioner had improperly asserted certain claims on capital appeal related solely to his noncapital conviction.  Id. at 575.  In denying those claims, the Supreme Court indicated that it had examined the noncapital case record and "discovered that the record did not contain any clear disposition of [Petitioner's] PCRA petition, much less an order definitively disposing of that petition."  Id. at 575 n.4.  The Supreme Court consequently entered a per curiam order directing the trial court to "enter a final order disposing of [the] petition in the [noncapital] case so that [Petitioner] has the opportunity to appeal the disposition to the Superior Court."  Id; (Doc. 80-1).

But the trial court did not enter a final order or otherwise immediately dispose of Petitioner's PCRA case.  It instead permitted the Federal Community Defender Office for the Eastern District of Pennsylvania to enter an appearance in February 2006 and then granted Petitioner an extension of time to file an Amended Petition.  (Doc. 65-1, at 628–29; Doc.

3

78-1).  Petitioner filed his Amended Petition approximately sixteen months after the Supreme Court entered its *per curiam* order.  (Doc. 78–2).

In his Amended Petition, Petitioner presented multiple claims not included in his original petition, including claims that rope and fiber evidence found in his vehicle were insufficiently challenged at trial because of prosecutorial misconduct and ineffective assistance of counsel.  (See Doc. 78-2, at 47–52, 102–108).  "Thereafter, over a six-year period, [Petitioner] filed a plethora of motions, including motions for discovery, recusal, and mandamus, and the case was reassigned to two different judges."  Dowling, 2014 WL 10915493, at *2.  Relevant to the present motion, Petitioner moved the trial court on August 5, 2008, to permit him to engage in an array of discovery related to "counsel's failure to challenge the unreliable forensic [rope and fiber] evidence."  (Doc. 65-1, at 667–69).  The trial court summarily denied Petitioner's request on January 19, 2010. Id. at 680–81.

After years of additional litigation, Petitioner filed a motion to recuse the entire York County Court of Common Pleas bench.  (Doc. 78-5).  On August 31, 2012, the Supreme Court reassigned Petitioner's noncapital PCRA case to the Honorable Robert J. Eby.  (Doc. 78-16).  After assuming Petitioner's PCRA case, Judge Eby ordered the parties to provide a

4

summary of "procedural issues requiring the attention of the Court, with a suggested method of resolution for those issues[.]" (Doc. 78-17).

In its summary, the Commonwealth argued that the Supreme Court's 2005 *per curiam* order required the trial court to view Petitioner's Amended Petition not as an amendment to his original petition but instead as an improper serial petition over which it lacked jurisdiction. (See Doc. 78-20, at 11–16). Judge Eby agreed with the Commonwealth, dismissed the Amended Petition, and deemed moot "all PCRA Petitions and related filings docketed with this Court after September 29, 2005[.]" (Doc. 78-22, at 5).

The Superior Court affirmed Judge Eby's dismissal on appeal. Com. v. Dowling, 2014 WL 10915493 at *3. The Superior Court concluded that the Supreme Court's *per curiam* order constituted a "directive to the PCRA court to enter an order disposing of the petition," which "cannot be construed to any extent as permission for [Petitioner] to start filing new motions and petitions." Id. For this reason, it determined that Petitioner's "post-2005 filings [were] untimely serial PCRA petitions over which the trial court had no jurisdiction." Id. The Supreme Court denied Petitioner's petition for allowance of an appeal on January 21, 2015. Com. v. Dowling, 108 A.3d 34 (Pa. 2015).

5

On January 26, 2015, Petitioner filed a federal petition for writ of habeas corpus. (Doc. 1). Therein, Petitioner included Claims II.A and V.B, which substantively mirror his relevant state court ineffective assistance of counsel and prosecutorial misconduct claims. (See id. at 35–36, 92–114). On August 21, 2015, Petitioner filed a motion for federal discovery. (Doc. 20). Respondents opposed Petitioner's motion and asserted that most of his claims were procedurally defaulted. (Doc. 27 at 5). On April 11, 2016, the Court granted Petitioner's motion in part, including his request for discovery related to Claims II.A and V.B. (Doc. 37, at 5–7).

On July 15, 2025, Petitioner filed the motion to transfer evidence presently before the Court. (Doc. 59). In his motion, Petitioner contends that, although his expert examined "rope and cordage slides and paperfolds in the custody of the West Manchester Police Department" onsite, the examination was rendered insufficient by "less-than-optimal conditions in the room where the inspection took place, including the lack of sufficient lighting and risk of contamination of the evidence due to dust and debris." Id. at 4. Petitioner argues that, for his expert to "properly advise counsel about the validity of the state's expert testimony at trial," the evidence must be transferred to Microtrace LLC's laboratory for forensic examination. Id.

6

On July 29, 2025, the Court ordered the parties to brief whether the rope and fiber evidence Petitioner seeks to further develop can "be legally considered" in his case. (Doc. 61, at 6) (citing Shoop v. Twyford, 596 U.S. 811, 820 (2022)). In his briefing, Petitioner contends that the doctrine of procedural default does not provide a bar to the Court's consideration of the rope and fiber evidence he seeks to develop "because the jurisdictional bar the state court invoked is not adequate as a matter of federal law" and because "he did not fail to develop the factual basis" of his claims in state court. (Doc. 65, at 11–20) (quoting 28 U.S.C. § 2254(e)(2)).

Respondents maintain that Petitioner's claims are procedurally defaulted because his Amended Petition was dismissed as an improper serial PCRA petition and "courts have routinely held that Pennsylvania's statute of limitations for PCRA petitions is an adequate and independent state procedural rule." (Doc. 71, at 11) (citation omitted). Respondents also contend that Petitioner failed to develop the factual basis of his claims in state court. (See id. at 15–17).

## II.   Discussion

Because a federal court "'may *never* needlessly prolong a habeas case, particularly given the need to promote the finality of state convictions,'" it must "before facilitating the development of new evidence,

7

determine that it could be legally considered in the prisoner's case."

Twyford, 596 U.S. at 820 (citation omitted).  For the rope and fiber

evidence Petitioner seeks to develop to be deemed admissible and

therefore eligible for legal consideration in his federal habeas case,

Petitioner must overcome three legal barriers.

First, Petitioner must demonstrate that Claims II.A and V.B are not

barred from federal review by the doctrine of procedural default.  Second,

Petitioner must demonstrate that the evidence is admissible under 28

U.S.C. § 2254(e)(2).  Third, Petitioner must demonstrate good cause for

discovery as required by Rule 6(a) of the Rules Governing Section 2254

Cases in the United States District Courts.

### A.   The doctrine of procedural default does not bar federal review of Claims II.A and V.B.

To demonstrate that the rope and fiber evidence he seeks to develop

in support of Claims II.A and V.B may be legally considered on federal

habeas review, Petitioner must first demonstrate that those claims were

fairly presented to the state court and are not precluded by the doctrine of

procedural default.  Twyford, 596 U.S. at 820.

In most circumstances, a federal district court may not consider the

merits of a petitioner's habeas claim unless he has "exhausted the

remedies available" in state court.  See 28 U.S.C. § 2254(b)(1)(A);

8

O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). "The exhaustion requirement is satisfied only if the petitioner can show that he fairly presented the federal claim at each level of the established state-court system for review." Holloway v. Horn, 355 F.3d 707, 714 (3d Cir. 2004). To "fairly present" a claim for exhaustion purposes, the petitioner must advance "a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." Bennett v. Superintendent Graterford SCI, 886 F.3d 268, 280 (3d Cir. 2018) (quoting McCandless v. Vaughn, 172 F.3d 255, 261 (3d. Cir. 1999)).

Where a petitioner has fairly presented a federal claim but a "state court refuses to hear [the claim] because of a violation of state procedural rules, a federal habeas court is barred by the procedural default doctrine from considering the claim[], unless the habeas petitioner can show 'cause' for the default and 'prejudice' attributable thereto." Johnson v. Pinchak, 386 F.3d 551, 556 (3d. Cir. 2004) (citations omitted). "Any procedural default, however, must rest on 'adequate and independent' state law grounds." Id.

As for the independency requirement, "[a] state procedural ground will not bar federal habeas relief if the state law ground is so 'interwoven with federal law' that it cannot be said to be independent of the merits of a

9

petitioner's federal claims." Id. (citing Coleman v. Thompson, 501 U.S. 722, 801 (1991)). As for the adequacy requirement, it "is intended both to ensure that state courts do not insulate disfavored claims from federal review, and to ensure that federal habeas review is not barred unless petitioners have fair notice of the steps they must take to avoid default." Campbell v. Burris, 515 F.3d 172, 179 (3d. Cir. 2008). Whether a state court's procedural ruling is adequate to bar federal review is "itself a question of federal law." Cruz v. Arizona, 598 U.S. 17, 26 (quoting Beard v. Kindler, 558 U.S. 53, 60 (2009)).

"Ordinarily, a violation of a state procedural rule that is 'firmly established and regularly followed'. . . will be adequate to foreclose review of a federal claim." Id. (citation omitted). "Nevertheless, in 'exceptional cases,' a 'generally sound rule' may be applied in a way that 'renders the state ground inadequate to stop consideration of a federal question.'" Id. (citation omitted). In "the rarest of situations," the denial of a claim in state court may be based on "an unforeseeable and unsupported state-court decision on a question of state procedure" that does not preclude review. Id. (citation omitted). When a state court forecloses relief based on a procedural ruling that is "unforeseeable," federal review is not barred because "[n]ovelty in procedural requirements cannot be permitted to

10

thwart review. . . applied for by those who, in justified reliance upon prior decisions, seek vindication in state courts of their federal constitutional rights." Id. (citation omitted).

Here, Petitioner easily satisfies the fair presentation requirement. Petitioner argued in his state court Amended Petition that the Commonwealth engaged in prosecutorial misconduct during its closing argument by lying "about the forensic evidence that had been presented, implying that the rope in Petitioner's car and the fibers found on it were 'exactly the same' as the rope and fibers that had been used to tie up [the victim] in the gallery, when the actual testimony confirmed that the ropes and fibers were merely consistent with one another."   (Doc. 78-2, at 51–52) (emphasis removed).  He also alleged that trial counsel ineffectively challenged the Commonwealth's rope and fiber evidence.  Id. at 102–03. Petitioner reasserted these same arguments on appeal and now presents parallel arguments in his federal petition. (See Doc. 1, at 35–36, 99–101; Doc. 19-1 at 74, 104–07).

Whether Petitioner's claims are barred by the procedural default doctrine presents a more difficult question.  Respondents contend that Petitioner's claims are barred from federal review because, by affirming the PCRA court's dismissal of those claims, "the state court relied on one of the

11

most recognized and followed procedural bars: lack of jurisdiction to address an untimely PCRA petition." (Doc. 71, at 8). According to Respondents, once "the Supreme Court directed the PCRA court to perform the ministerial act of formally denying [Petitioner's] PCRA petition," "the PCRA court was restricted to entering a final order," which rendered the six-years of litigation that followed post-Supreme Court *per curiam* order jurisdictionally invalid. Id. at 10.

Because the Supreme Court's order stripped the PCRA court of its ability to act in any way other than entering a final order denying relief, Respondents argue that the Superior Court accurately determined based on an independent and adequate interpretation of state procedural law that Petitioner's Amended Petition constituted an untimely serial petition. See id. at 11–13 (collecting cases in which the PCRA statute-of-limitations has been held an independent and adequate ground upon which habeas relief may be denied).

In contrast, Petitioner argues that the Superior Court's procedural ruling is inadequate and does not preclude federal review of his claims. He contends that because his PCRA petition "was pending up until it was formally dismissed by Judge Eby's final order of March 28, 2013[,]" the PCRA court properly allowed him to amend his petition and relate his filing

back to the timing of his original petition.  (See Doc. 65, at 12–14).  He argues "[t]he state court's interpretation of its own rules (to decide that it lacked jurisdiction to permit any amendment of Petitioner's timely, pending, initial PCRA petition before issuing a final order) was novel, unforeseeable, and unsupported by those very rules." (Doc. 65, at 12).

The Court agrees with Petitioner.  The PCRA requires that a petitioner file his PCRA petition "within one year of the date the judgment becomes final" or else be time-barred from doing so.  42 PA. CONS STAT. § 9545(b).  The PCRA's "timeliness requirements are mandatory and jurisdictional in nature," which means that "no court may properly disregard or alter them in order to reach the merits of the claims raised in a PCRA petition that is filed in an untimely manner." Com. v. Murray, 753 A.2d 201, 203 (Pa. 2000).

But Pennsylvania Rule of Criminal Procedure 905(A) runs parallel to the PCRA's timeliness requirement.  Rule 905(A) vests trial courts with the "discretion to permit the amendment of a pending, timely-filed post-conviction petition" and mandates amendment be "freely allowed to achieve substantial justice." Com. v. Crispell, 193 A.3d 919, 929 (Pa. Super. Ct. 2018) (quoting Com. v. Flanagan, 854 A.2d 489, 499–500 (Pa. 2004)); Pa. R. Crim. P. 905(A).  To determine whether a trial court may permit

13

amendment under Rule 905(A), Pennsylvania courts examine whether an order has been entered in the case "that ends the litigation or disposes of the entire case." Com. v. Harper, 890 A.2d 1078, 1081 (Pa. Super. Ct. 2006). Before a final order has been entered, the trial court must "treat the subsequent petition for post-conviction relief as an amendment to the first timely filed petition, even if there is substantial time between the two filings." Com. v. Gamble, No. 2944 EDA 2019, 2012 WL 2395949, at *4 (Pa. Super. Ct. June 8, 2021).

Only once a trial court enters a final order disposing of an original PCRA petition does it lose discretion to permit amendment under Rule 905(A) and are all petitions filed thereafter rendered independently subject to the PCRA's timeliness provisions. Crispell, 193 A.3d at 929; Flanagan, 854 A.2d at 604 (citation omitted). Superior Court precedent expressly provides that where a final order has not been entered disposing of a petitioner's original petition, a PCRA court's jurisdictional analysis is "flawed as a matter of law" where it treats a petitioner's "amended petition as a serial, post-conviction petition." Crispell, 193 A.3d at 929.

Further relevant, 42 PA. CONS STAT. § 5505 grants trial courts the power to "modify or rescind any order . . . notwithstanding the prior termination of any term of court, if no appeal from such order has been

14

taken or allowed." 42 PA. CONS STAT. § 5505. Though Section 5505 places a 30-day cap on a trial court's power to modify or rescind a final order, its cap is inapplicable to interlocutory orders. Com. v. Harper, 890 A.2d 1078, 1081 (Pa. Super. Ct. 2006); Com. v. Nicodemus, 636 A.3d 1118, 1120 (Pa. Super. Ct. 1993) ("This statutory provision applies only to final Orders. The provision of this statute does not apply to interlocutory Orders."). Section 5505 applies in PCRA cases with equal force as it does in other state court litigation. See Harper, 890 A.2d at 1081; Com. v. Stoffa, No. 912 WDA 2020, No. 913 WDA 2020, 2021 WL 2473891, at *5 (Pa. Super. Ct. June 16, 2021).

In Petitioner's case, the Pennsylvania Supreme Court determined in its opinion affirming Petitioner's capital conviction that the trial court's order denying his original, timely petition in his noncapital case was an interlocutory order, not a final order:

> the record [does] not contain any clear disposition of [Petitioner's] PCRA petition, much less an order definitively disposing of that petition. Under these circumstances, we feel compelled to direct the trial court to **enter a final order** disposing of [Petitioner's] PCRA petition in the robbery case so [he] has the opportunity to appeal that disposition to the Superior Court.

Dowling, 883 A.2d at 575 n.4. Despite the Supreme Court's directive, however, the trial court did not immediately enter a final order but instead permitted Petitioner to amend his petition and to continue litigating for the

15

next six years.  Dowling, 2014 WL 10915493, at *2.  Because a final order had not been entered when Petitioner filed his Amended Petition in 2007, "firmly established and regularly followed" Pennsylvania law required his Amended Petition be treated as "an amendment to [his] first timely filed petition," not as one independently subjected to the PCRA's timeliness provisions.  (Doc. 65-1, at 629; Doc. 78-22, at 5); Gamble, 2012 WL 2395949, at *4; Crispell, 193 A.3d at 929.

By affirming Judge Eby's dismissal, however, the Superior Court did not adhere to firmly established and regularly followed law.  It instead reached the novel conclusion that the Supreme Court's 2005 *per curiam* order stripped the PCRA court of its discretion to permit amendment under Rule 905(A) and rendered Petitioner's Amended Petition an untimely, serial petition "over which the [PCRA] court had no jurisdiction."  See Dowling, 2014 WL 10915493 at *3.  But the Superior Court's procedural ruling is inadequate to preclude federal review of Petitioner's Claims II.A and V.B for two reasons.  Cruz, 598 U.S. at 26.

First, it is evident that the Superior Court added novel procedural nuance to the "firmly established and regularly followed" rule that amendments made to petitions in a PCRA case prior to the entrance of a final order relate back to the petitioner's original, timely petition and are not

16

independently subjected to the PCRA's timeliness provisions.  E.g., Gamble, 2012 WL 2395949, at *4; Crispell, 193 A.3d at 929.  Before the Superior Court's opinion in this case, no Pennsylvania case held there to be an exception to that rule in scenarios where the Supreme Court orders the trial court to convert its interlocutory order denying PCRA relief into a final order but where it does not comply with the order before it allows amendment.  The Superior Court's announcement of novel procedural nuance is inadequate to preclude federal review.  Burris, 515 F.3d at 179.

Second, the Superior Court expanded the scope of Supreme Court reach over cases pending before the inferior courts in a novel way by concluding that the Supreme Court held the authority to strip the trial court of jurisdiction over Petitioner's PCRA case notwithstanding that the Supreme Court itself lacked appellate jurisdiction over Petitioner's noncapital case.

Pennsylvania appellate courts have "long recognized that the entry of judgment is a jurisdictional matter." Johnson the Florist, Inc. v. TEDCO Const. Corp., 657 A.2d 511, 514 (Pa. Super. Ct. 1995).  Although the appellate jurisdictional requirement sometimes results in judicial inefficiency, appellate courts do not regularly assume jurisdiction to review

17

trial court action in cases where a judgment is lacking.  See Zitney v. Appalachian Timber Prods., Inc., 72 A.3d 281, 285 (Pa. Super. Ct. 2013).

Because the appellate courts mandate judgment as a jurisdictional prerequisite, the "firmly established and regularly followed" appellate practice in cases where a party seeks pre-judgment judicial review is for the appellate court to enter an order requiring the party to praecipe the trial court for a final judgment to permit appeal.  E.g., Satiro v. Maninno, 237 A.3d 1145, 1146 n.1 (Pa. Super. Ct. 2020) ("In a Per Curiam Order. . . this Court directed Appellant to praecipe the trial court prothonotary to enter judgment on the decision of the trial court to avoid quashal of his appeal."); Harris v. Felouzis, 331 A.3d 919, 923 n.2 (Pa. Super. Ct. 2025) (permitting an appeal to move forward only after Appellant's praecipe for judgment). The Supreme Court did not order a party to praecipe the PCRA court for a final order in this case, perhaps because no party had filed an appeal in Petitioner's noncapital case.  Instead, the Supreme Court directly ordered the trial court to divest itself of jurisdiction and did so despite lacking appellate jurisdiction over Petitioner's PCRA case.  (Doc. 78–2).

By failing to question or analyze whether the Supreme Court had the authority to mandate trial court action in this way, the Superior Court affirmed, at least implicitly, that the Supreme Court can mandate trial court

18

action even in cases where no party has filed a notice of appeal, where a final order has not been entered, and where it does not hold appellate jurisdiction over the case. See Dowling, 2014 WL 10915493 at *3. The Superior Court's implicit expansion of Supreme Court reach is equally inadequate to preclude federal review of Petitioner's Claims.

In sum, the Court finds that, by affirming Judge Eby's dismissal of Petitioner's PCRA case, the Superior Court (1) added novel nuance to PCRA timeliness procedure otherwise "firmly established and regularly followed" and (2) premised its opinion on a novel understanding of the ability of the Supreme Court to command inferior court action in cases where it lacks appellate jurisdiction. As a result, the Court concludes that the Superior Court's rejection of Petitioner's claims was premised on an inadequate procedural ruling, which renders Petitioner's Claims II.A and V.B not barred by the doctrine of procedural default.[1]

---

[1] At this juncture, the Court makes no determination as to whether Petitioner fairly presented any other claim presented in his federal habeas petition to the state court, nor whether the doctrine of procedural default precludes federal examination of any claim aside from Claims II.A and V.B on grounds independent from those discussed herein.

19

**B.**     **Section 2254(e)(2) does not bar Petitioner from developing evidence in support of Claims II.A and V.B.**

Petitioner must next demonstrate that the rope and fiber evidence he seeks to develop is admissible under 28 U.S.C. § 2254(e)(2).  Section 2254(e)(2) provides that where an "applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim" unless certain exceptions are satisfied, one of which being where the "factual predicate [] could not have been previously discovered through the exercise of due diligence" and where "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2).

The United States Supreme Court has interpreted "evidentiary hearing" as used in Section 2254 expansively to mean that, in cases where an "applicant has failed to develop the factual basis of a claim in State court proceedings," a district court may not admit or review any "new evidence for any purpose"—not just evidence produced at an evidentiary hearing— unless Section 2254(e)(2)'s requirements are satisfied.  Shinn v. Ramirez, 596 U.S. 366, 389 (2022).

Section 2254's limitation on the introduction of new evidence is not applicable, however, where the applicant is not at fault for lack of evidentiary development in state court. Williams v. Taylor, 529 U.S. 420, 432 (2000). A petitioner has not "failed to develop the factual basis of a claim" where he, for example, "was diligent in his efforts to develop [a] claim in state court by filing a motion for access to evidence" and requests an evidentiary hearing on his claims. Han Take Lee v. Glunt, 667 F.3d 397, 406 (3d. Cir. 2012); 28 U.S.C. § 2254(e)(2).

Respondents argue that Petitioner was not diligent in his efforts to develop the rope and fiber evidence before the state court because he did not seek "access [to] the rope and fiber evidence" until he began to pursue "his untimely serial PCRA petition" nearly "11 years after he was charged and years after the 2002 PCRA evidentiary hearing and the 2004 PCRA court opinion that rejected his PCRA claims." (Doc. 71 at 16–17). But Section 2254(e)(2) does not require that a petitioner act with diligence at any specific point in time before the state court. But even were that not the case, Petitioner did not "fail[] to develop the factual basis" of his Claims in state court, which means that Section 2254(e)(2) due diligence requirement is not trigged in the first place.

21

Petitioner filed a motion seeking rope and fiber evidence discovery in support of his prosecutorial misconduct and ineffective assistance of counsel claims on August 5, 2008.  (Doc. 65-1, at 667–69).  The trial court summarily denied his request without explanation on January 19, 2010.  Id. at 680–81.  Petitioner again moved for discovery in support of his claims and for an evidentiary hearing in support on June 17, 2015.  (Doc. 78-23).  Included in Petitioner's renewed request was an explicit request that "his expert Skip Palenik, Microtrace LLC" be granted access to the rope and fiber evidence.  Id. at 7–8.  Based on its determination that the Supreme Court's *per curiam* order precluded further litigation, the trial court again summarily denied Petitioner's motion on October 15, 2015.  (Doc. 78-24).  Petitioner's efforts fall squarely within the category of efforts that preclude a showing of fault under Section 2254(e)(2).  See Glunt, 667 F.3d at 406.  Consequently, Section 2254(e)(2) does not bar his request to have the rope and fiber evidence transferred to Microtrace LLC.

## C.   Petitioner has shown good cause in support of his motion for transfer of evidence.

The final hurdle Petitioner must overcome is to show good cause for discovery under Rule 6(a) of the Rules Governing Section 2254 Cases.  Rule 6(a) provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit

22

the extent of discovery." Third Circuit case law requires a habeas petitioner "satisfy the 'good cause' standard by setting forth specific factual allegations which, if fully developed, would entitle him or her to the writ." Williams v. Beard, 637 F.3d 195, 209 (3d. Cir. 2011) (citations omitted).

The Court previously found good cause for Petitioner to engage in a wide range of rope and fiber evidence discovery in this matter, and it continues to find good cause now. (See Doc. 37, at 5–7). Petitioner first alleges in his federal habeas petition that the Commonwealth violated his Sixth and Fourteenth Amendment rights by, among other actions, "mispresent[ing] the forensic evidence that had been presented, implying that the rope in Petitioner's car and fibers found on it were 'exactly the same' as the rope and fibers that had been used to tie up [the victim.]" (Doc. 1, at 35). When examining whether prosecutorial misconduct violates due process, the reviewing court must "examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." Moore v. Morton, 255 F.3d 95, 107 (3d Cir. 2001). The Court concludes that Petitioner has demonstrated good cause because his allegation of prosecutorial

23

misconduct, under the facts alleged, would be the type to entitle him to habeas relief.

Petitioner next asserts that trial counsel violated the Sixth Amendment by ineffectively challenging the Commonwealth's rope and fiber expert, which resulted in the prosecution being "able to argue to the jury that the rope found at the scene was the same as the rope purportedly found in [his] car." (Doc. 1 at 99–100). To establish ineffective assistance of counsel, a petitioner must show that his counsel's representation "fell below an objective standard of reasonableness and that such defective performance caused [him] prejudice." Strickland v. Washington, 466 U.S. 668, 687–88 (1984). Petitioner has also demonstrated good cause under this theory of relief.

## III.  Certification for Interlocutory Appeal

The Court next turns to whether this matter should be certified for interlocutory appeal. To certify a non-final order for interlocutory appeal under 28 U.S.C. § 1292(b), a district court must conclude that the "order involves a controlling question of law as to which there is a substantial ground for difference of opinion and [where] an immediate appeal from the order may materially advance the ultimate termination of this litigation." CFPB v. Navient Corp., 522 F. Supp. 3d 107, 113 (M.D. Pa. Feb. 26, 2021)

(citations omitted). Where no party has requested that an order be certified, "a district court may certify an interlocutory order for appeal under 28 U.S.C. § 1292(b) *sua sponte*." Guinan v. A.I. duPont Hosp. for Children, No. 09-0228, 2009 WL 2877595, at *2 (E.D. Pa. Aug. 28, 2009) (collecting cases).

The Court concludes that each Section 1292(b) element supports certification. Under the first element, a controlling question of law is "at the very least every order which, if erroneous, would-be reversible error on final appeal" and one "serious to the conduct of the litigation, either practically or legally." Katz v. Carte Blanche Corp., 496 F.2d 747, 755 (3d. Cir. 1974). The Court's determinations as to the inadequacy of the Superior Court's procedural ruling, the inapplicability of Section 2254(e)(2), and the presence of good cause under Rule 6(a) of the Rules Governing Section 2254 Cases each constitute controlling questions of law because AEDPA bars record expansion in all but the rare habeas case and evidentiary development and record expansion, if permitted improperly, will result in reversible error. E.g., Mothershead v. Wofford, No. C21-5186 MJP, 2022 WL 2755929, at *1 (W.D. Wash. July 14, 2022) (certifying for interlocutory appeal where Section 2254(e)(2) was deemed inapplicable).

Under the second element, "a substantial ground for difference of opinion exists where 'the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented.'" Couch v. Telescope, Inc., 611 F.3d 629, 633 (9th Cir. 2010) (quoting Federal Procedure, Lawyers Edition § 3:212 (2010)).

As under Section 1292(b)'s first element, the Court's determination that Petitioner is permitted to engage in evidentiary development and record expansion in support of his claims is a determination subject to a "substantial ground for difference of opinion" because AEDPA prohibits those acts in federal habeas cases in all but the rarest of circumstances. 28 U.S.C. § 1292(b). The Court's decision was also made without circuit guidance and constitutes a first-impression analysis of whether the Superior Court promulgated a novel procedural ruling. Element two therefore supports certification.

Section 1292(b)'s third element also supports certification because certification will materially advance the ultimate termination of this litigation. Under the current trajectory of litigation as guided by this Memorandum, Petitioner's rope and fiber evidence will be transferred to the custody of

26

Microtrace LLC.  After discovery has concluded, a federal evidentiary hearing on at least some of his claims may be warranted because the state court denied Petitioner's request for an evidentiary hearing on an inadequate state ground.  See Wilson v. Beard, 426 F.3d 653, 665 (3d. Cir. 2005); Morris v. Beard, 633 F.3d 185, 196 (3d. Cir. 2011); (Doc. 78–24).  Following these steps, the Court will make merits rulings on multiple claims that it has deemed not barred by the procedural default doctrine and while analyzing certain facts developed solely before the federal court.

Each of these steps are atypical in federal habeas cases and will significantly delay the ultimate resolution of this case.  Were the Third Circuit to disagree with the Court's determinations, however, these steps will likely be deemed unnecessary.  Certification therefore supports AEDPA's goal of furthering expedited resolution in federal habeas cases.  See Rhines v. Weber, 544 U.S. 269, 276 (2005) (citation omitted).

Having found all three of Section 1292(b)'s elements to weigh in favor of certification, the Court will exercise its discretion and certify its order granting Petitioner's motion to transfer evidence for interlocutory appeal.

## IV.   Conclusion

The Court concludes that Petitioner's Claims II.A and V.B are not barred by the doctrine of procedural default, by Section 2254(e)(2)'s

statutory limitations on the development of new evidence in federal court, or by Rule 6(a) of the Rules Governing Section 2254 Cases.  As a result, it will grant Petitioner's motion to transfer evidence and certify this matter for interlocutory appeal.  A separate Order shall follow.

Date: 2/26/26

BY THE COURT:

JUDGE JULIA K. MUNLEY
United States District Court